IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ELIZABETH (REDETZKE) HAVENS and JOR BRYCE HAVENS, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civ.  No. 04-6359-HO |
| v. | ) ) | ORDER |
| CITY OF EUGENE, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

This case involves the execution of a search warrant at property located at 464 West Adams Street, 909 West Fifth Avenue and 923 West Fifth Avenue in Eugene, Oregon on October 17, 2002. In the predawn hours of October 17, 2002, more than 50 police officers using a light armored vehicle executed a search warrant at three adjacent properties.  The owners of the properties, Tam Davage and Marcella Monroe, (who have alleged similar claims

against defendants in a separate action) rented the 464 Adams Street house to plaintiffs Elizabeth and Jor Havens.

Defendants the City of Springfield, Jerry Smith, Richard Lewis, Michael Wisdom, Jim Ball, Thad Buchanan, Casey Froehlich, Doug Ledbetter, Dan Long, Kevin McCormick, Lee Thoming, Lane County, Jan Clements, Christopher Doyle, Gordon Gill, and Clifton Harrold previously moved for summary judgment as to all claims. Plaintiffs' counsel failed to respond in writing to the motions. In addition, approximately 25 other summary judgment motions were filed and plaintiffs' counsel responded by dismissing those moving parties. Currently before the court are several summary judgment motions, some of which have resulted in yet more stipulated dismissals. Plaintiffs' counsel declined to respond for several months, but has recently filed some responses and sur-replies. In addition, there is a motion to strike and a motion for attorney fees. Much of the background information regarding this case can be found in the accompanying order regarding the Davage case, 04-6321-HO.

Plaintiffs Elizabeth Havens (formerly Redetzke) and Jor Havens allege claims for unlawful search (lack of probable cause), unlawful search (judicial deception), excessive force, excessive force related to destruction of property, and unreasonable seizure pursuant to 42 U.S.C. § 1983. Plaintiffs also allege state law claims for false imprisonment, assault, battery, intentional

infliction of emotional distress, and invasion of privacy by intrusion upon seclusion.

## 1.   Motion for Summary Judgement By defendants Karol Herbert, Jeff Drullinger, Pete Deshpande (#278)

Defendants Pam Olshanski, Scott Dillon, Rene Tobler, and Steve Swenson also moved for summary judgment, but plaintiffs stipulated to their dismissal. Defendants Herbert, Drullinger, Deshpande, and Swenson move for summary judgment as to all claims against them.

### A.   First Cause of Action- Lack of Probable Cause

As noted in the Davage order, there was probable cause supporting the search. There was sufficient basis for Judge Henry to find probable cause to issue the search warrant. Thus, even the officers who prepared the affidavit in support of the search warrant or were team leaders are entitled to summary judgment on plaintiffs' first cause of action asserting lack of probable cause.[1]

---

[1]Plaintiffs also argue that the "evidence must be suppressed because the police violated the 'knock and announce' rule." This is not a criminal case in which evidence of criminal activity is being offered against the plaintiffs. The failure to knock and announce does implicate excessive force, but has nothing to do with probable cause to search.

B.    Second Cause Of Action Judicial Deception

It is unclear from plaintiffs' memo if they oppose summary judgment as to this claim.  Plaintiffs do not offer any evidence of intentional or reckless false statements or intentional or reckless omissions in the warrant application.  Summary judgment is granted as to this claim.

C.    Third Cause of Action Excessive Force

Plaintiffs in this case offer very little argument or support for their claims.  Plaintiffs do not respond to the individual summary judgment motions, but do adopt the arguments of plaintiffs in Davage.  It is difficult to locate support for excessive force specifically directed against these plaintiffs as a result. However, Plaintiff Elizabeth Havens has submitted an affidavit detailing her account of the events.  Defendants have moved to strike the affidavit, but to the extent she details her own personal knowledge it is enough to show she allegedly suffered excessive force.  When the affidavit is combined with other materials in the two cases, it is enough to demonstrate the presence of certain defendants during the time the alleged excessive force took place.

Plaintiff Elizabeth Havens, who resided at the 464 Adams residence, states she had just awoke on the morning of October 17, 2002, when she

4 - ORDER

heard three terrifyingly loud explosions that shook the house and scared me so badly I could not even move. I heard a loud, crackling, frightening announcement system seemingly shouting my address ... over and over and I saw red flashes out my bedroom window.... My fiancé Jor ... and myself were naked in our bed. I saw Jor get up out of bed [and] grasp for some clothing. At that moment I heard the doors burst in with a splintering crash as they were sledge-hammered open by the defendants, who were gaining entry by this action without bothering to knock first.... I saw three defendants, though there were possibly more, all dressed in camouflage uniforms with face masks and guns, swarm into our bedroom. One of these defendants and possibly others, pointed his gun at my fiancé Jor as he sat naked on the floor with his hands spread out in front of him.... I was in terror that I was about to be shot in my bed and my fiancé killed on the floor in front of me.

At this point the defendants, one of whom was wearing glasses, reached towards me and grasping me by my arms dragged me up out of the bed exposing me to everyone in the room as completely naked. I then suffered the humiliation of having my arms pulled behind me and my hands handcuffed while standing on the bed totally naked. The defendants then fumbled about in my closet adjacent to the bed for covering to put over me. Since I had just been handcuffed naked my arms were not able to go through the sleeves of the robe and so the defendants simply draped it about me and tied it with a sash. It seemed to me that this whole process took several minutes during which I was exposed, naked and vulnerable, to all the individuals in my bedroom and possibly others who may have been standing in the doorways of my bedroom. I saw that Jor had been handcuffed naked by the defendants as well as I saw his arms were not through the sleeves of the robe that the defendants had placed on him.

Jor and I were then taken into the living room at gunpoint and made to sit on the couch, guarded by a defendant with a gun....

During the time that [the Davage plaintiffs] were being forced into the living room my robe was slipping off and gaping in the chest area. I looked at Jor and saw that his robe was falling open and his genital area was becoming exposed. After I saw Marcella was made to sit by the defendants on the chair across from me, I saw that

5 - ORDER

Marcella was hunched on that chair shivering in her underwear and I was embarrassed for us all to be handcuffed in this state of exposure, humiliated in front of one another and waiting in fear and anguish for an answer as to why were being treated in this manner.

I was very cold and beginning to shiver.  It was 39 degrees in Eugene that morning of October 17, 2002.  I felt my hands were becoming numb from the handcuffing. I heard Marcella say that her handcuffs were too tight and that she was cold.  An unidentified RDU officer leaned over in front of her, held up a knife to her face and said he was going to cut her handcuffs off.  At this point I also said my handcuffs were too tight.  None of the defendants responded to my plea and being fearful of the defendants ... I did not repeat my request.  At no time did any of the defendants ask any of us whether our handcuffs were too tight, or whether we were cold or not or whether we felt we were adequately covered or whether we consented to the search and seizure operation.

A while later, a female officer, who was defendant Rauch, came by and adjusted the front of my robe and placed a blanket over Jor and I.  Some time after this, a male officer, who was defendant Drullinger, came over to Jor and I with a camera and insisted on taking our pictures, telling us to "get your heads up" and I was subjected to the humiliation of having my photo taken by defendant Drullinger while I was handcuffed, disheveled, distraught and a prisoner in my own home.

.... I heard defendant Herbert make a comment to the effect that she had the power to treat us in whatever way she saw fit and then defendant Herbert said that if Jor was going to be an "asshole" to her she would be an "asshole" to him....

It seemed to me that a couple of hours went by while the defendants ransacked our house with defendants occasionally coming in and going out.  I saw and heard several defendants, who were defendants Klinko, Froehlich and others come in and ask Tam and Marcella questions and ask them how to use keys to their cars....

At some point, I heard Jor ask for the names of the defendants in the room with us.  One defendant who was either defendant McCormick or defendant Drullinger said that they were "obviously police officers."  Jor said,

without raising his voice and without addressing the
defendants in a hostile manner, "I didn't ask what you
are, I asked who you are."  The defendant became angry,
jabbing his finger in Jor's face and yelling, "Well, you
WERE growing pot in the basement and now you are going to
get busted for it, right!!??"

...

I heard defendant Herbert now tell us that we were each
going to use the restroom.  Defendant Herbert then took
me into the bathroom first.  I did not feel like I had to
urinate or defecate, but sat down on the toilet and
defendant Herbert began to interrogate me.  I felt very
intimidated ....

[H]ours after the defendants detonated grenades in our
yard, dragged me out of bed at gunpoint and handcuffed us
while naked, humiliated me and my fiancé Jor in front of
my landlord and his wife ... I was still forcibly
detained as a prisoner in my own home ... still
handcuffed....

...

Two days later, after still not being able to feel one of
my thumbs ... I went to Urgent Care to see if I was now
suffering permanent damage from the lengthy handcuffing
I had just endured .... The doctor on duty determined
that I had temporary nerve palsy, directly related to the
handcuffing by defendants....

Affidavit of Elizabeth Havens (#361) at pp. 3-12.

As noted in the Davage order:

Merely securing the occupants during a valid search does
not amount to excessive force. See Mueller v. Mena, 544
U.S. 93, 100 (2005) (use of handcuffs to detain occupants
during execution of a search warrant is reasonable).
However, "a detention conducted in connection with a
search may be unreasonable if it is unnecessarily
painful, degrading, or prolonged." Franklin v.
Foxworth, 31 F.3d 873, 875 (9th Cir. 1994).  Even though
plaintiffs fail to adequately respond, the motion for
summary judgment is denied on the excessive force claim
as plaintiffs' own testimony creates issues of fact as to
the reasonableness of the detention once Deshpande was

present.  See Liston v. County of Riverside, 120 F.3d
965, 981 (9th Cir. 1997)(genuine issue of fact regarding
the reasonableness of detention with respect to officers,
who by their presence in the home, assisted in
restraining plaintiffs).  Although defendants claim the
law was not clearly established, at the time, regarding
the contours of an unreasonable detention such that they
would know that a detention that lasted for about 4 and
a half hours, required plaintiffs to remain in a numbing
position, required plaintiffs to remain cuffed, and
required plaintiffs to remain only partially clothed for
two hours while cold was unconstitutional, the case law
demonstrates otherwise.  See Meredith v. Erath, 342 F.3d
1057, 1061-62 (9th cir. 2003):

> Police may detain persons without
> probable cause while executing a search
> warrant if justified by the circumstances.
> Michigan v. Summers, 452 U.S. 692, 705, 101
> S.Ct. 2587, 69 L.Ed.2d 340 (1981).  Such a
> detention may be unlawful under the Fourth
> Amendment "either because the detention itself
> is [unreasonable] or because it is carried out
> in an unreasonable manner."  Franklin v.
> Foxworth, 31 F.3d 873, 876 (9th Cir. 1994).  A
> seizure must be "carefully tailored" to the
> law enforcement interests that, according to
> the Summers line of cases, justify detention
> while a search warrant is being executed.
> Ganwich v. Knapp, 319 F.3d 1115, 1122 (9th Cir.
> 2003) (quoting Florida v. Royer, 460 U.S. 491,
> 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).
> Where such law enforcement interests arguably
> justify a detention, we balance those
> interests against the intrusiveness of the
> seizure to the persons detained. Summers, 452
> U.S. at 699-705, 101 S.Ct. 2587 (1981);
> [Footnote omitted] Ganwich, 319 F.3d at 1120.
> Thus, the reasonableness of a detention
> depends not only on if it is made, "but also
> on how it is carried out." Franklin, 31 F.3d
> at 875 (quoting Tennessee v. Garner, 471 U.S.
> 1, 7-8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).
> "**[A] detention conducted in connection with a
> search may be unreasonable if it is
> unnecessarily painful, degrading, or prolonged**
> [.]" Id. at 876.  [Footnote omitted].

>        We have not previously addressed the
>   reasonableness of detaining a person in
>   handcuffs during the execution of a search
>   warrant for evidence. [Footnote omitted] **We
>   have held, however, that the use of guns and
>   handcuffs during an investigatory detention
>   "must be justified by the circumstances."**
>   Robinson v. Solano County, 278 F.3d 1007, 1014
>   (9th Cir.2002) (quoting Baker v. Monroe
>   Township, 50 F.3d 1186, 1193 (3d Cir.1995)).
>   We held in United States v. Bautista, 684 F.2d
>   1286 (9th Cir. 1982) that the use of handcuffs
>   was justified during a Terry stop to ensure
>   officer safety from suspected violent
>   criminals and to prevent their escape. Id. at
>   1289. We have also commented, in a case
>   involving the detention of a suspect during a
>   search for contraband, that "handcuffing
>   substantially aggravates the intrusiveness" of
>   a detention. Washington v. Lambert, 98 F.3d
>   1181, 1188 (9th Cir. 1996) (internal quotation
>   marks omitted); Bautista, 684 F.2d at 1289
>   (same).
>        **During searches for narcotics, courts
>   have required a showing of justifiable
>   circumstances for using handcuffs.** Compare
>   Baker v. Monroe Township, 50 F.3d 1186,
>   1193-94 (3d Cir. 1995) (holding that officers
>   were not justified in handcuffing a mother and
>   her teenage children who were approaching a
>   residence where the officers were executing a
>   search warrant for narcotics), with Torres v.
>   United States, 200 F.3d 179, 185-86 (3d Cir.
>   1999) (permitting the use of handcuffs because
>   "the agents had good reason to fear violence
>   or destruction of evidence as they entered the
>   appellees' home" to search for narcotics);
>   United States v. Fountain, 2 F.3d 656, 663
>   (6th Cir.1993) (same), overruled on other
>   grounds by Trepel v. Roadway Express, Inc.,
>   194 F.3d 708, 717 (6th Cir. 1999).

(emphasis added).

    Accordingly, the law regarding detention was clearly
established that prolonged detentions that are
unnecessarily painful and degrading violate the Fourth
Amendment.  Plaintiffs allege that they were handcuffed

for four hours causing pain and that it was degrading in that plaintiff Monroe was kept partially nude and cold for two hours.  While it is true that the Ninth Circuit found that as of September 8, 2003, it was not clearly established that "simply handcuffing a person and detaining her in handcuffs during a search for evidence would violate her Fourth Amendment rights" without justifiable circumstances, <u>Meredith</u>, 342 F.3d at 1063, it was clearly established that a detention conducted in connection with a search is unreasonable it if is unnecessarily painful.  <u>See</u> <u>id</u>. The <u>Meredith</u> court specifically referenced tight  handcuffs and although Deshpande asserts that he had the allegedly tight handcuffs removed with respect to plaintiff Monroe, she asserts that she was in excessively tight handcuffs for 45 minutes.  The  <u>Meredith</u> court noted even 35 minutes was too long.  In addition, the plaintiffs in this case complain that not only were they caused pain by the tightness of the handcuffs, but by the position and lack of clothes causing pain to their backs, neck, and shoulders as well as wrists.  As the <u>Meredith</u> court stated, no reasonable officer could believe that the abusive application of handcuffs was constitutional. <u>See</u> <u>id</u>. There are issues of fact as to whether plaintiffs were subject to abusive use of handcuffs and detained in a degrading manner.

<u>Davage</u> 04-6321-HO (concurrently filed order) at pp. 46-49.

Here, allegedly plaintiffs Jor and Elizabeth Havens were subjected to an even more humiliating and abusive detention given the lack of clothing.  The motion for summary judgment on the excessive force claim is denied as to all defendants who were present during the detention.

It appears that defendants Herbert, Drullinger, and Deshpande were not present for the initial cuffing, but were present thereafter and may not have done enough to prevent the allegedly humiliating circumstances under which the plaintiffs were detained in a manner allegedly causing excessive pain.

10 - ORDER

D.   Fourth Cause of Action Destruction of Property by Excessive Force

Plaintiffs here offer no evidence of destruction of property by the moving defendants or that the moving defendants directed such destruction and the motion for summary judgment is granted. While plaintiffs allege that the door was broken down without a "knock and announce," plaintiffs do not identify these defendants as responsible.

E.   Fifth Cause of Action Unreasonable Seizure

It does not appear that these plaintiffs were arrested,[2] but to the extent the handcuffing constitutes an arrest, that claim is better suited to the excessive force claim.   Police may detain persons without probable cause while executing a search warrant if justified by the circumstances.   The motion for summary judgment is granted as to this claim.

F.   State Law Claims

Pursuant to ORS § 30.265(1), summary judgment is granted in favor of the individual defendants with respect to the state law claims.

_____

[2]In her affidavit, Elizabeth Havens states that Herbert told her she was not going to be charged with anything.  Jor havens, who did not submit an affidavit, was apparently allowed to leave after [receiving] some sort of ticket for an infraction.  See Affidavit of Elizabeth Havens (#361) at pp. 9, 11.

11 - ORDER

2.    Motion for Summary Judgement by Defendant Thomas Turner (#292)

Turner asserts that he did not enter any of the properties during the search and that he did not prepare the affidavit in support of the search warrant.  There is insufficient evidence that Turner's leadership role with respect to SWAT members resulted in any constitutional violations.  The motion for summary judgment is granted as to all claims.


3.    Motion for Summary Judgement by Nathan Reynolds (#297)

Defendant Nathan Reynolds is an officer with the Eugene Police Department.  Reynolds was a part of the entry team at 464 Adams.[3] Reynolds had brief contact with plaintiffs while they were still naked and assisted in getting them to stand up.  Reynolds was present only for five to ten minutes.  Unlike the Davage case, there does not appear to be any excessive force initially such as throwing a plaintiff to the floor.  There is an issue of being handcuffed while naked, but given the brief length of time and the possible dangerousness of the early part of the entry, Reynolds is entitled to qualified immunity. See Los Angeles County, California v. Rettele, 127 S.Ct. 1989 (2007).  There is no reference to Reynolds in the Havens' affidavit with respect to the alleged

---

[3]Reynolds was the third to enter and he did not break down the door.

12 - ORDER

humiliating and painful detention and therefore summary judgment is
granted as to all claims against defendant Reynolds.


4.   Motion for Summary Judgement by Eric Klinko (#306)

Klinko also played a role in the initial handcuffing of
plaintiffs.  He also stayed to search the 464 Adams residence and
thus was present during the alleged unreasonably humiliating and
painful detention.  The motion for summary judgment is granted as
to all claims except the excessive force claim (Claim Three).


5.   Motion for Summary Judgment by Ray Brown (#314)

Defendant Ray Brown was a police officer with the City of
Eugene during the time in question.  Brown was on the entry team
for the 464 Adams Street residence.  Brown states that he did not
damage any property and was present for only five to ten minutes.
As with defendant Reynolds, defendant Brown's motion for summary
judgment is granted as to all claims.


6.   Motion for Summary Judgment by the City of Eugene (#324)

While plaintiffs apparently oppose the City's motion for
summary judgment, they fail to present evidence of action pursuant
to official government policy that caused a constitutional tort
beyond the pleadings.  Plaintiffs make conclusory allegations of
deliberate indifference and "officers' history of using excessive

force," but do not offer sufficient specifics.  Plaintiffs also

conclude that the City's failure to investigate after the fact

shows official policy.  However, as noted in the Davage Order:

> plaintiffs fail to produce sufficient evidence of any
> policy that allegedly produced action that caused
> excessive force against persons or property.
> Accordingly, the motion for summary judgment with respect
> to plaintiffs' Fourth and Fifth Claims for relief is
> granted as to the City. [footnote omitted]
>         Finally, with respect to plaintiffs assertion that
> the City failed to investigate the misconduct of officers
> in this case, plaintiffs provide no evidence that this
> alleged lack of action, after the alleged violations
> occurred, resulted in the actions occurring.  Plaintiffs
> do not allege any violations based on activities
> occurring after the search and do not show how such
> failure amounts to a policy that caused the alleged
> deprivation of rights.

Davage  04-6321-HO (concurrently filed order) at pp. 57-58.

As to the state law claims, to the extent excessive force may

have occurred, the motion is denied as to battery and assault

claims.  Plaintiffs make no attempt to discuss any of the state law

claims and thus they fail to present any legal or factual argument

supporting the remaining state law claims and summary judgment is

granted as to those claims.


7.   Motion for Attorneys Fees by Dismissed Defendants (#331)

Many defendants seek attorneys fees because plaintiffs refused

to dismiss them and waited for them to file summary judgment

motions and either ignored the motions or responded by finally

dismissing them.  As to the ignored motions, plaintiffs agreed to

14 - ORDER

dismiss them at oral argument during the first round of summary judgment motions.

Plaintiffs' counsel asserts that he was not fully aware of which defendants played which role and had always intended to dismiss those who did not enter the Havens' residence. Counsel claims he tried to get a duty roster, but one did not exist. Defense counsel claim that as of March 6, 2006, they had informed plaintiffs' counsel of who did and did not enter the house. Both sets of counsel have extended the litigation of this case and required unnecessary use of judicial resource. Plaintiffs' counsel does appear to have been slow to acknowledge that many defendants did not engage in any actions with respect to his clients, but defense counsel for the moving defendants has filed duplicative briefing and documents by filing a new summary judgment motion for each individual defendant where one would have been sufficient for all defendants. Accordingly, defendants really incurred no or little additional expense because all counsel did was cut and paste (for the most part) the briefing for each motion. The motion for fees is denied at this time. Once a judgment is entered, the court may revisit the issue of whether the prevailing party is entitled to fees pursuant to 42 U.S.C. § 1988.

15 - ORDER

8.   Motion to Strike the Affidavit of Elizabeth Havens by Karol
Herbert, Jeff Drullinger, Pete Deshpande, Steve Swenson, Pam
Olshanski, Scott Dillon, and Rene Tobler (#364)

Defendants seek to strike the affidavit as grossly late and
because it contains inadmissable statements.  The affidavit was
filed very late, but the court gave defendants additional time to
respond and set over oral argument on the summary judgment motions
for that purpose.   To the extent the affidavit contains
inadmissible statements, such statements have not been considered
in determining genuine issues of fact.  The motion is denied.

CONCLUSION

For the reasons stated above, the pending motions are granted
and denied as follows:

1.   Motion for Summary Judgment (#278) (**Karol Herbert, Jeff
Drullinger, Pete Deshpande**)

-Denied as moot as to Pam Olshanski, Scott Dillon, and Rene
Tobler, and Steve Swenson
-Granted as to all on unlawful search claims (First and Second
claims)
-Denied as to Deshpande, Herbert and Drullinger on the
excessive force claim (Third Claim)
-Granted as to Herbert, Drullinger, and Deshpande on the
unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to Herbert, Drullinger, and Deshpande on the
unreasonable seizure claim (Fifth Claim)
-Granted as to Herbert, Drullinger, and Deshpande on the state
law claims (Claims Six through Ten)

2.   Motion for Summary Judgment (#292) (**Thomas Turner)**

-Granted as to all claims

16 - ORDER

3.   Motion for Summary Judgment (#297) (**Nathan Reynolds**)

     -Granted as to all claims


4.   Motion for Summary Judgment (#306) (**Eric Klinko**)

     -Granted as to the unlawful search claims (First and Second Claims)
     -Denied as to excessive force claim (Third Claim)
     -Granted as to unnecessary destruction excessive force claim (Fourth Claim)
     -Granted as to unreasonable seizure claim (Fifth Claim)
     -Granted as to state law claims (claims Six through Ten)

5.   Motion for Summary Judgment (#314) (**Ray Brown**)

     -Granted as to all claims


6.   Motion for Summary Judgment (#324) (**City of Eugene**)

     -Granted as to the unlawful search claims (First and Second Claims)
     -Granted  as to excessive force claim (Third Claim)
     -Granted as to unnecessary destruction excessive force claim (Fourth Claim)
     -Granted as to unreasonable seizure claim (Fifth Claim)
     -Denied as to assault and battery claims but granted as to remaining  state law claims


7.   Motion for Attorneys Fees (#331) (**City of Springfield, Lane County, Scott Akins, Terry Bagley, Jim Ball, Jennifer Bills, Jonathan Bock, Thad Buchannan, Russ Boring, Jan Clements, George Crolly, Chris Doyle, Casey Froehlich, Gorden Gill, Robb Griesel, Clifton Harrold, Tim Haywood, Aly House, Brian Humphries, Scott James, Greg Jones, James Jorgenson, David Lewis, Richard Lewis, Dan Long, Chris Kilcullen, Doug Ledbetter, Kevin McCormick, Doug Mozan, Tony Peterman, Tom Rappe, John Risko, John Savage, Jerry Smith, Lee Thoming, John Umenhofer, Jerry Webber, Ted Williams, Michael Wisdom, and Stefan Zeltvay**)

     -Denied at this stage of the proceedings


17 - ORDER

8.  <u>Motion to Strike Affidavit of Elizabeth (Redetzke) Havens</u>
    <u>(#364)</u> (**Karol Herbert, Jeff Drullinger, Pete Deshpande, Steve**
    **Swenson, Pam Olshanski, Scott Dillon, and Rene Tobler**)

    -Denied


    DATED this __6th__ day of July, 2007.

                                    __s/ Michael R. Hogan___
                                    United States District Judge

18 - ORDER